ÁNGELA RODRÍGUEZ ORTIZ, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. O-68-252.     Decided October 30, 1970.

358

*Virgilio Brunet* and *Edwin A. Cuevas* for petitioner. *Eddie Gaud Caraballo, Emilio Delgado Roque,* and *Milagros Muñiz Bou* for respondent.

Mr. Justice Torres Rigual delivered the opinion of the Court.

The lawsuit in this appeal centers on the scope and sense of subd. 4, § 3 of the Workmen's Accident Compensation Act, Act No. 45 of April 18, 1935, 11 L.P.R.A. § 3, subd. 4.

It is advisable and convenient that we start by copying the text of said subdivision, from which we should perforce depart in the discharge of our function, without disregarding, of course, other useful and pertinent elements for the statutory interpretation. Said subdivision reads as follows:

"4. If, as a result of the injury or disease, the case of the workman or employee is decided as a case of permanent total disability, the workman or employee shall continue to receive a

sum equal to sixty-six and two-thirds (66⅔) per cent of the wages which he received or, but for such accident, would have been received on the day of the accident, for such time as said total disability may last; but in no case shall there be paid more than ninety (90) dollars or less than forty (40) dollars a month; And *provided, That at the request of the beneficiary, and in lieu of a life pension, the Manager may pay to the beneficiary the compensation in part or in whole and in one single payment, provided the latter may justify, to the satisfaction of the Manager, a profitable investment, and for this purpose the compensation shall be computed on the basis of five hundred forty (540) weeks for a term that, added to the term during which the injured person had already received the monthly compensation payments, it does not exceed five hundred forty (540) weeks.* If after the investment is made there is a balance left, same shall be paid at the rate of fifty (50) dollars a month, except in case the beneficiary may choose to make another investment." (Italics ours.)[1]

The facts which gave rise to the lawsuit refer to the total and permanent disability suffered by appellant, Ángela Rodríguez Ortiz, as a consequence of a labor accident. In accordance with the foregoing subdivision, the Manager of the State Insurance Fund fixed a compensation for her equivalent to sixty-six and two-thirds (66⅔) percent of the wage she received on the day of the accident, payable in monthly instalments of $90 for such time as said total disability would last. Instead of receiving the monthly payment of $90, Ángela chose to receive it in one whole and single payment which said subdivision provides when the beneficiary justifies a profitable investment. The Manager computed this total payment on the basis of $35 for 540 weeks, for a total of $19,023.[2] Petitioner did not agree, alleging that the compen-

---

[1] Said subdivision has been subsequently amended by Act No. 103 of June 21, 1968.

[2] The total payment amounts strictly to $18,900. The breakdown of the amounts paid to appellant is the following:

"Total amount paid in the case ........................ $19,023
Evaluation of the case when she resorted to the investment

sation should have been computed on the basis of sixty-six and two-thirds (66⅔) percent of the wage she received on the day of the accident for 540 weeks. Her weekly wage amounted to $83.04. Applying her formula on the basis of this wage, the compensation would amount to *$29,894*, instead of the *$19,023* estimated on the basis of the Manager's formula. The Industrial Commission affirmed the Manager's computation.

Petitioner requests us to reverse the decision of the Industrial Commission, holding that her formula of compensation —sixty-six and two-thirds (66⅔) percent of the wage for 540 weeks—is the correct one. Her contention is, in effect, that subdivision 4 establishes two different compensations for permanent total disability: a periodic compensation of sixty-six and two-thirds (66⅔) percent of the weekly wage with a maximum monthly limit of $90 and a minimum of $40, for such time as said disability may last, and another compensation of sixty-six and two-thirds (66⅔) percent of the weekly

---

alternative for permanent total disability ($35 × 540 weeks) .. $18,900
    Payments made before investments were authorized:
    For 40% of the loss of the general physiological functions
originally granted ......................................... $ 1,850
    Payment for attorney's fees ........................... $ 1,000
    For monthly instalments .............................. $ 515
       (Before petitioner made investment, since these payments had to be deducted from the evaluation which was made of the total amount to be paid in the case, from the overdue monthly instalments which had to be paid to petitioner at the rate of $90, the amount paid for these items was deducted, and for that reason, the amount of her monthly instalments were less than $90.)
        6 monthly instalments at $61.25 .......... $ 369
        January 1965 ............................. 50
        April 1965 ............................... 96

        TOTAL ............................. $ 515
INVESTMENTS:
January 5, 1965 ....................................... $ 7,658
January 5, 1965 ....................................... 8,000

    TOTAL ......................................... $18,900"

wage for 540 weeks, without any limit whatsoever for such time when the injured party decides to accept, with the approval of the Manager, the payment in part or in whole and in one single payment.

We do not agree. Subdivision 4 establishes the compensation for the cases of permanent *total* disability, fixing it in a sixty-six and two-thirds (66⅔) percent of the wage the injured party received on the day of the accident, but limited to a maximum of ninety (90) dollars a month and a minimum of forty (40) dollars. The evident purpose of this compensation is to protect the injured party and his dependents, providing them with a certain amount of money delivered in a periodic manner which substitutes his wage during the term of the disability. It is a uniform formula which prevails in the workmen's accident compensation legislation of the jurisdictions of the United States. 8 Schneider, Workmen's Compensation, § 1890 (3rd ed.). However, through the "Provided" clause which we have underlined in the copied text, the payment in whole of the compensation—"in part or in whole and in one single payment"—is allowed as an exception, provided the injured party justifies, to the satisfaction of the Manager, a profitable investment.

The text of the subdivision is reasonably clear. It deals with a compensation which may be paid in two different forms: periodically or as a whole. In both cases the compensation is computed on the basis of sixty-six and two-thirds (66⅔) percent of the wage the injured party received at the time of the accident, subject to a monthly maximum of $90 and a minimum of $40. Unlike the periodic payment, which sum is not definite because it depends on the duration of the disability, which may be for the lifetime of the injured party, the total payment, because of its nature, must be made in a definite amount. The lawmaker in the "Provided" clause fixed the manner for determining the same on the basis of 540 weeks.

Really, petitioner's interpretation suffers from an indulgent literalism. On the one hand, it splits up the "Provided" clause from the rest of subd. 4 as if it were a separate and different question. Since within the "Provided" clause the maximum and minimum of $90–40 for the computation of the compensation is not repeated, she concludes therefrom that the total payment is not subject to said limits. But, on the other hand, since the "Provided" clause does not provide any formula for the computation of the compensation, but it encompasses only the fixing of the basis to determine the total payment, petitioner is trapped in her own literal interpretation and, in order to avoid its logical consequence, resorts to the rest of the subdivision to look for the formula. But it is done halfway, since only one factor is selected for the computation which is favorable to her, that of the sixty-six and two-thirds (66⅔) percent of the weekly wage, rejecting the other, that of the minimum and maximum of $90–40, because it does not favor her. The strict application of her own interpretation—to read the "Provided" clause apart from the rest of the subdivision as if a different compensation was being established—leaves petitioner without any formula whatsoever to compute the total payment. The defect of her interpretation is, then, evident.

█ The rational sense of the "Provided" clause is attained only when it is considered as an integral part of the rest of the subdivision. That is, as a part of a whole, this whole being the compensation which subd. 4 provides: the sixty-six and two-thirds (66⅔) percent of the weekly wage which the injured party received on the day of the accident, subject to a maximum of $90 and a minimum of $40, except that when the compensation is paid as a whole, then the amount is determined on the basis of 540 weeks.

█ The economic impact of petitioner's interpretation is extraordinary. The same increases the compensation in more

than 160% when the payment is totally made. This is, from about $11,000 to more than $29,000.[3] It can be logically inferred that such economic impact could not be overlooked by the lawmaker, and that if the lawmaker's intention would have been to create two different compensations for the permanent total disability, with such a substantial economical consequence, he would have expressly set it forth in the text of the law. Particularly when these compensations are not capriciously fixed, but are framed on the basis of actuarial or economical studies, and that variations in the factors of the computation as the ones suggested by petitioner, or as we shall see hereinafter, as those which the Manager applied in this case, could cause adverse effects on the economical stability of the Fund.

On the other hand, the computation performed by the Manager and affirmed by the Industrial Commission is also wrong. The Manager determined the compensation on the basis of sixty-six and two-thirds (66⅔) percent of the weekly wage with a *weekly* limit of $35, instead of the *monthly* limit of $90-40 established by subd. 4. See footnote 3. The weekly limit of $35 appears in subd. 3 of said § 3 for the computation

---

[3] The total payment computed on the basis of 66⅔% of the weekly wage with a limit of $90-40 for 540 weeks amounts to $11,215.80. The arithmetical operation is the following: since the 66⅔% of the wage which petitioner received is larger than the monthly limit of $90 fixed by subd. 4, the maximum monthly limit of $90 is multiplied by 12 months for a total of $1,080; said amount is divided by 52 weeks to get the maximum weekly limit which brings forth a result of $20.77 a week. This is the amount which is multiplied by 540 weeks for a total of *$11,215.80*.

The total payment computed on the basis of the interpretation set forth by petitioner amounts to *$29,894.40*. The arithmetical operation used by petitioner is the following: she multiplies the daily wage of $13.84 by 6 working days to obtain the weekly wage of $83.04. From that amount she gets the 66⅔ percent which is equivalent to $55.36, which is multiplied by 540 weeks for a total of $29,894.40. The difference between the result of one formula and the other is of $18,678.60.

The formula erroneously used by the Manager was on the basis of $35, multiplied by 540 weeks, for a total of $18,900.

of the compensation for permanent *partial* disability.[4] In other words, the Manager computed the total payment not on the basis of the formulas set forth in subd. 4—sixty-six and two-thirds (66⅔) percent of the wage with the monthly limit of $90–40 for 540 weeks—but he resorted to subd. 3 to use a different limit, that of $35 a week.

We see no valid reason whatsoever to abandon the computation formula established in subd. 4, specifically approved to cover the permanent *total* disability, with which we are concerned in this case, and substitute it in part by the provisions of another subdivision, subd. 3, which covers another type of disability, permanent *partial*.

There is nothing in the present § 3 or in its precedents which may justify this error of the Manager. If the history of § 3 shows something, it is the intention of the lawmaker to establish a separate compensation for each type of disability. Since Act No. 45 of April 18, 1935 was approved, the lawmaker provided a specific compensation for each one of the disabilities, the *temporary*, the permanent *partial*, and the permanent *total* disabilities. In each one of them a similar formula, consisting of three factors, was applied: (a) a percent of the weekly wages, (b) with a minimum and maximum limit, (c) for a definite number of weeks. The limits were established on a *weekly* basis until 1957, when by virtue of Act No. 94 of June 22, 1957, the limit in the case of permanent *total* disability was established on a *monthly* basis, continuing so up to the present time. The lawmaker has periodically revised the formulas to increase the compensa-

---

[4] Said subd. 3, insofar as pertinent, provides:

"3. . . . For permanent partial disabilities specified below, the injured workman or employee shall receive additional compensation consisting of sixty-six and two-thirds (66⅔) per cent of the wages which were received . . . on the day of the accident, for the number of weeks specified in the following table; Provided, That in no case shall there be paid to the workman or employee more than thirty-five (35) dollars, or less than eight (8) dollars a week."

tions, but maintaining the same structure of the formula on the basis of the factors we mentioned before. See Acts: No. 52 of April 25, 1942, No. 162 of May 14, 1943, No. 284 of May 15, 1945, No. 163 of May 2, 1950, No. 115 of July 1, 1953, No. 52 of June 16, 1956, No. 94 of June 22, 1957, No. 79 of June 25, 1959, No. 101 of June 24, 1960.

■ Finally, the Manager cannot resort in this case to the case law rule to the effect that the administrative interpretations and rulings of specialized administrative agencies are entitled to great weight and respect from the courts. *Monllor & Boscio* v. *Industrial Commission*, 89 P.R.R. 389 (1963); *Widow of Alfonzi* v. *Industrial Commission*, 90 P.R.R. 674 (1964). This prudent and wise rule is applied when the text of the statute is ambiguous and the administrative interpretation has been generally accepted for a long period of time. See: I Davis, Administrative Law Treatise, § 5.06; Crawford, The Construction of Statutes, § 219 (1940).

None of these conditions prevails in the case at bar. Not only is the text of subd. 4 clear, but, as we have seen, the Manager's interpretation is obviously erroneous. Said interpretation has not been generally accepted either. From the decision itself of the Industrial Commission it is inferred that the Comptroller of Puerto Rico objected to the interpretation of the Manager.

Notwithstanding our conclusion to the effect that the Industrial Commission erred in its interpretation of the aforementioned subd. 4, judgment will be rendered affirming the decision appealed from, since said error, far from being prejudicial to petitioner, benefits her.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.